IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE CABRAL, | : |
| Plaintiff | : |
| v. | : Civil Action No. 02-cv-2806 |
| THE PHILADELPHIA COCA-COLA BOTTLING COMPANY, | : |
| Defendant. | : |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, The Philadelphia Coca-Cola Bottling Company ("Philadelphia Coca-Cola" or "the Company"), submits this Reply Brief in further support of its Motion for Summary Judgment.

## I.   INTRODUCTION

Plaintiff Jose Cabral's response to Philadelphia Coca-Cola's Motion for Summary Judgment raises no genuine issues of material fact so as to warrant denying the Motion. With regard to his hostile work environment claim, Plaintiff merely refers generally to "racial jokes" and "harassing statements," while misstating the record concerning the nature and extent of the purported statements and jokes. Stripped of the misstatements, Plaintiff's claim continues to fail, for the "statements" and "jokes" either never were made or were not "because of" Plaintiff's national origin and, at any rate, were not sufficiently pervasive and regular to establish a hostile work environment. Additionally, Plaintiff attempts to supplement the purported comments with new alleged incidents and events. However, these events are both wholly lacking in evidentiary support and are irrelevant as a legal matter to Plaintiff's claim.

With regard to Plaintiff's route assignment claim, Plaintiff attempts to recast the purported harm caused by Defendant as lost overtime pay so as to state the requisite tangible employment action. However, Plaintiff admitted at his deposition that his claim had nothing to do with overtime, but rather was based on his personal preference for the Marmora route over other routes to which he was assigned. Additionally, Plaintiff offers no evidence of any correlation between the number of trips a driver makes to Marmora and the amount of overtime worked. Plaintiff also seeks to supplement his route assignment claim by asserting that he was also treated unfavorably concerning the assignment of weekend overtime work. However, this distinct claim fails because it was not raised in the Complaint or the EEOC Charge of Discrimination that Plaintiff filed. Further, even if properly raised, it would still fail because Plaintiff has presented absolutely no evidence to show that he was discriminated against with respect to the assignment of weekend work.

Finally, summary judgment remains appropriate on Plaintiff's retaliation claim because Plaintiff still has not articulated sufficient evidence of a causal connection between his filing of an EEOC Charge and his termination. Nor has Plaintiff provided any evidence that the legitimate non-discriminatory reason proffered by Philadelphia Coca-Cola for his termination (his knowing submission of an admittedly false excuse from his dentist) is pretextual.

## II.     ARGUMENT[1]

### A.     Summary Judgment Should be Granted As to Plaintiff's Hostile Work Environment Claim.

#### 1.     In His Opposition, Plaintiff Makes a Number of Conclusory Statements That Are Inaccurate and Not Supported by the Evidence.

Plaintiff's response to Defendant's analysis of Plaintiff's hostile work environment claim in light of Plaintiff's actual deposition testimony is a combination of conclusory statements about "racist jokes" and "harassing statements" and misstatements of the facts in the record, several of which warrant correction.  First, Plaintiff states in his brief that his supervisors "made racist jokes and statements about … Hispanics."  See Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (hereinafter, "Pl. Br.") at 6, 14.  However, at his deposition, Plaintiff testified that Joe Ortlieb was the only supervisor who made comments with which Plaintiff took issue for purposes of the litigation.  Exhibit 1 to Plaintiff's Opposition Memorandum Appendix (hereinafter, "Pl. Exh."), Transcript of the 11/20/02 Deposition of Jose Cabral (hereinafter, "Cabral Tr.") at 39-40.

Second, the two alleged Ortlieb comments that Plaintiff identified at his deposition are by no means "racial jokes" or "harassing statements" about Plaintiff.  To the contrary, one comment – as Plaintiff expressly admitted at his deposition (Pl. Exh. 1, Cabral Tr. at 27-28) – was a suggestion that Plaintiff "go back" to his former job if he was not happy at Philadelphia Coca-Cola.  See Defendant's Memorandum of Law In Support of Motion For

---

[1]     As an initial matter, Plaintiff's Response to Defendant's Motion for Summary Judgment should be stricken because it was not filed and served on Defendant's counsel until five days after it was due.  See Exhibit 1, 1/29/03 Homer to Vance Letter (agreeing to Plaintiff's request for six day extension of time until February 13, 2003 to file response); Exhibit 2, 2/18/03 Vance to Woolf e-mail (advising that Plaintiff's response was complete and available for pickup).

Summary Judgment (hereinafter, "Def. Br.") at 14-15.  The other comment, which was at worst insensitive, related to Martin Luther King Day and not to Plaintiff or his ethnicity.  Id.

Third, Plaintiff's statement in his brief that supervisor Tom Moore made racist comments is contradicted not only by the testimony described above, but also by other testimony by Plaintiff specifically referring to Moore.  Plaintiff testified as follows at his deposition:

> Q: Did Mr. Moore ever make a harassing remark to you?
> A: Harassing?
> Q: Yes.
> A: No.
> Q: Did he ever make any kind of remark to you that you considered to be discriminatory?
> A: No.

Pl. Exh. 1, Cabral Tr. at 39.

Fourth, with respect to the purported statements by co-workers Arachow, Lesinski, and Schafte, Plaintiff states generally that they "made … racist jokes or statements." Pl. Br. at 6.  However, at his deposition, Plaintiff identified only two comments that they – or anyone else – allegedly made that were related to Hispanics or him (i.e., that Hispanics were paid too much).  See Def. Br. at 5.  Even if true, such isolated comments do not suffice to create a workplace hostile to Hispanics.

Fifth, contrary to Plaintiff's representations in his brief, he admitted at his deposition that he never complained about the two purported statements regarding Hispanic pay (allegedly made by Schafte and Lesinski), as the transcript page cited by Plaintiff at page 6 of his opposition brief in fact establishes.  See Pl. Exh. 1, Cabral Tr. at 65 (Q: "Did you yourself complain to anyone else about Mr. Schafte's remark?"  A: "No."  Q: "Anybody else other than Mr. Schafte?"  A: "No.") and 220 (Q: "When you heard these alleged remarks by Mr. Lesinski, did you complain to anyone?"  A: "No.").  Nor, contrary to the erroneous assertion in his brief

that he reported Lesinski's and Arachow's remarks to Ortlieb (an assertion which is not supported by the page cited therein – Cabral Tr. 120), did he report the alleged Arachow or Lesinki comments. Rather, Plaintiff testified that he did not report the comments to anyone as "They were jokes." Pl. Exh. 1, Cabral Tr. at 43-44. Thus, the Company had no knowledge of the alleged remarks.

Finally, Plaintiff's attempt to excuse his failure to complain about the events that form the basis for his claims in this action on the ground that he believed such a complaint would "fall on deaf ears" or be "futile" (Pl. Br. at 8, 11) is both irrelevant as a legal matter and groundless. It is well established that a plaintiff's failure to complain pursuant to the employer's published anti-harassment policy will not be excused merely because he fears that management will not take the complaint seriously. See Church v. Maryland, 180 F. Supp. 2d 708, 738 (D. Md.) ("simply believing that her reporting attempts would be futile is not a sufficient excuse not to complain to someone regarding the sexual harassment"), aff'd, Civil Action No. 02-1179, 2002 U.S. App. LEXIS 25909 (4th Cir. 2002). Further, Plaintiff's "deaf ears" conclusion is based solely on his supposed experience with the former head of the Company's Human Resources Department, Larry Norvell, when, in January 2000, he allegedly complained about a remark pertaining to the Martin Luther King holiday. However, assuming, as Plaintiff alleges, that he never heard anything further from Mr. Norvell, that does not establish that Mr. Novell (himself an African-American) did not look into his complaint. In any event, Philadelphia Coca-Cola hired a new Vice President of Human Resources, Tracee Hunt, in March 2000 (Exhibit 3, Transcript of the 11/12/02 Deposition of Tracee L. Hunt at 9), and Plaintiff has not provided any basis for concluding that Ms. Hunt would not have addressed Plaintiff's concerns, had he voiced

them. Further, Cabral also admitted he never complained to any of the "plant managers" in Moorestown (Mr. Ivey, Mr. Peterman, and Mr. Batisce). Pl. Exh. 1, Cabral Tr. at 224-25.[2]

### 2. Plaintiff's New Allegations Have Nothing to Do With His Work Environment and Are Not Evidence of a "Hostile Environment."

Although Plaintiff refers generally to a pattern of "racist jokes" and "harassing statements," other than through the misstatements described above, he does not challenge the fact that most of the "jokes" and "statements" he points to – including the two comments attributed to Plaintiff's supervisor – had nothing to do with and were not "because of" Plaintiff's national origin and that the comments, taken has a whole, were not "pervasive and regular." See Def. Br. at 14. Instead, Plaintiff attempts to supplement his thin evidence concerning hostility in the work environment by making baseless, unsupported, and inadmissible allegations that, even if true, have nothing to do with establishing a hostile work environment claim. Specifically, Plaintiff alleges that:

(1)  The Company engaged in discrimination with respect to daily route and weekend shifts;

(2)  The Company denied Plaintiff's request for Memorial Day leave;

(3)  The Company refused to hire Hispanic applicants;

(4)  The Company refused to supply Plaintiff with a replacement trailer;

(5)  The Company terminated Jose Nieves; and

(6)  Joe Ortlieb, Plaintiff's supervisor, has a "history of discrimination against Hispanics."

---

[2] Plaintiff also makes a number of less critical misstatements in his opposition. For example, Plaintiff claims that voluntary weekend shift assignments "are not strictly controlled by the CBA" (Pl. Br. at 3), presumably to undercut the Company's legitimate, non-discriminatory reason why he was not given all of the weekend overtime work that he would have liked. In fact, as with mandatory overtime, which is determined by reverse seniority, the Company selects among those who volunteer to work overtime based on their relative seniority.

None of the above allegations create a triable issue as to Plaintiff's hostile work environment claim. Such a claim, by definition, is concerned with the environment in which the plaintiff works. It stems from the Supreme Court's recognition that Title VII protects employees not only from discriminatory tangible employment actions, but also provides employees with the "right to work in an environment free from discriminatory intimidation, ridicule and insult." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). It is harassment that is of concern in such claims – in particular, harassment that is of such a severe and pervasive nature that it effectively alters the terms and conditions of the plaintiff's employment. Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001). A hostile work environment claim is not a catch-all for claims based on supposed events that were unrelated to the work environment, which are primarily of an economic impact, or which were not directed at the plaintiff. See also Burke v. Sears-Roebuck Co., Civil Action No. 98-4364, 1999 U.S. Dist. LEXIS 8243 (E.D. Pa. June 2, 1999) ("A hostile work environment claim arises when 'the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998)).

Despite the obvious focus of a hostile work environment claim, most of Plaintiff's six supplemental allegations have nothing to do with his work environment. For example, the allegation about the termination of Jose Nieves relates solely to Nieves. Plaintiff provides no explanation, much less evidence, of how Nieves' termination created a hostile work environment for him. Indeed, Plaintiff testified at his deposition that he had seen Nieves only "a couple of times," had never spoken with him, and didn't know why he separated from Philadelphia Coca-Cola. Pl. Exh. 1, Cabral Tr. at 179-80.

Similarly, the allegation about Joe Ortlieb relates to when Ortlieb worked for a different employer from 1991 through 1997. See Pl. Br. at 7-8. It goes without saying that such an unsubstantiated allegation cannot form the basis of a hostile work environment claim against Defendant. Significantly, Cabral admitted that he did not file a discrimination charge against Ortlieb when they both worked at the prior employer. Pl. Exh. 1, Cabral Tr. at 197.

There is also no evidence or explanation as to how the Company's alleged failure to hire Hispanic applicants affected Plaintiff's work environment. This absence is particularly striking given that those who were supposedly discriminatorily refused employment applied from 1996 to 1999, before the limitations period for Plaintiff's claim and the "work environment" on which the Court is focusing for purposes of such claim.[3] See Pl. Exh. 1, Cabral Tr. at 139.

Finally, there is no evidence or explanation as to how the routes to which Plaintiff was assigned or whether or not he was given a new trailer exposed him to discriminatory harassment or ridicule or otherwise tainted the work environment.

Thus, these new allegations do not provide a basis for establishing or buttressing Plaintiff's hostile work environment claim.

    **3.**    **The New Allegations Lack Any Evidentiary Basis and, Therefore, As a Matter of Law, May Not Be Considered By the Court.**

Plaintiff's new allegations in support of his hostile work environment claim should also be disregarded on the ground that they are conclusory allegations and, and in some

---

[3] Plaintiff, citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), claims that the limitations period should be ignored. However, this misstates the holding in Morgan. The Supreme Court held that a party may go back and look at events outside of the limitations period only where the acts are related. Where the acts are unrelated or of a different nature, as in this case, a plaintiff may not rely on events that allegedly took place outside the limitations period. 122 S.Ct. at 2075.

cases, contrary to the facts as acknowledged by Plaintiff himself.  As such, they are not appropriate for consideration by the Court.  See Williams v. West Chester, 891 F.2d 458, 470 (3d Cir. 1989) (evidence must be admissible, not merely hearsay or conclusory allegations); Chu v. Samuel Geltman & Co., No. 92-4480, 1993 U.S. Dist. LEXIS 17473, at *6 (E.D. Pa. Nov. 17, 1993) (to defeat a motion for summary judgment, the non-moving party "may not rest upon … vague and amorphous argument that the record somewhere contains facts sufficient to support its claims").

For example, contrary to Plaintiff's representation in his opposition memorandum, he was offered and did take the entire week of May 20, 2001 off from work, and he did so with the Company's blessing.  See Def. Br. at 8.  Additionally, as set forth infra in Section II.B, Plaintiff provides no evidence to support his allegation with respect to daily route assignments and weekend shifts.  Plaintiff also offers no evidence to support his slanderous claim that Joe Ortlieb has a "history of discrimination against Hispanics."  Nor does he offer any evidence that Jose Nieves' termination was discriminatory.[4]  Rather, both so-called "facts" are merely assumed.

Finally, Plaintiff's claim about the replacement trailer relates to an event that purportedly occurred in October 2002 – after the filing of the Complaint.  Accordingly, it cannot form the basis of Plaintiff's hostile work environment claim.  Ray v. Freeman, 626 F.2d 439, 442

---

[4] In his opposition at page 7, Plaintiff asserts that Defendant did not reinstate Nieves, even though it had permitted a Non-Hispanic employee who had previously been fired to return to work.  Plaintiff's comparison, however, is invalid.  Nieves was terminated for a clear violation of the absenteeism policy and he was a short-term employee for about two months.  See Pl. Exh. 2, Peterman Tr. at 44, 56-57; Pl. Exh. 5, Fonseca Tr. at 63-64.  The employee given another chance, on the other hand, was a 20-year employee. Pl. Exh. 2, Peterman Tr. at 38.  Plaintiff neglects to disclose to the Court or account for the fact that, at the same time Nieves was terminated, another Non-Hispanic was also terminated for the same reason and was not reinstated.  Id. at 59, 62.

(5th Cir. 1980) ("[d]iscrete acts of discrimination which occur after the filing of an EEO complaint must first be reviewed administratively before such acts may serve as the basis for finding of discriminatory conduct justifying remedial action by the court").

### B.  Summary Judgment Should be Granted on the Route Assignment Claim.

In an attempt to save his disparate treatment claim, Plaintiff makes two new arguments.  First, he revises his allegations with respect to his route assignment claim – that he was not assigned to drive to Marmora as much as he would have liked – and, without foundation, asserts for the first time that he lost overtime pay as a result of the routes to which he was assigned.  See Pl. Br. at 11.  Second, Plaintiff raises a new claim – that he was discriminatorily denied the opportunity to work overtime on weekends.  Id. at 12.  Neither of these new arguments creates a triable issue warranting denying Defendant's Motion.

#### 1.  Plaintiff Never Claimed, and There is No Evidence to Support His Assertion, That He Lost Overtime Pay Due To the Destinations to Which He Drove.

Attempting to avoid the legal reality that the Company's alleged assignment of Plaintiff to drive to Marmora less often than he would have liked does not constitute a tangible employment action for purposes of establishing a prima facie case, Plaintiff now, for the first time, asserts that the Company's destination assignments cost him overtime hours.  However, Plaintiff makes the claim only through a bald statement by his attorney in a memorandum of law.  There is no affidavit or deposition testimony from Plaintiff to support the assertion.  Nor is there evidence of any kind that would establish a correlation between overtime hours and number of

trips to Marmora.[5]  Indeed, Plaintiff admitted in his deposition that generally there is not overtime during the week.  Pl. Exh. 1, Cabral Tr. at 134-35.  Accordingly, for this reason alone, Plaintiff's belated assertion must be rejected.  See, supra, at Section II.A.3.

Additionally, Plaintiff's sworn testimony indicates that his route assignment claim has nothing to do with lost compensation or overtime.  At his deposition, Plaintiff stated that the only reason he wanted to drive to Marmora more often was because he liked the route better:

> Q: Why, in your mind, was this a more favorable assignment, to drive to Marmora than to drive to Philadelphia?
>
> A: Because to go to Marmora takes you two hours to get to Marmora.  Takes you another 35 minutes to 40 minutes to stay in Marmora.  And to make a whole run around – turn around – is about five hours you stay out of the plant without just driving.  Instead, if you're going from Philadelphia to Moorestown, you have to be hooking [up the trailer], unhooking, hooking, unhooking, hooking, unhooking, as many times as you are being sent to Philadelphia….  Instead, in those five hours that you go to Marmora, you get to see the country and you don't see nothing and you just drive there.  More favorable.

Pl. Exh. 1, Cabral Tr. at 70-71.[6]  Plaintiff also expressly admitted there was no difference in, or loss of, pay resulting from being assigned to drive to Marmora versus Philadelphia.  Id. at 69-72.

---

[5] Although Plaintiff cites to the deposition testimony of Richard Andrilli and Joseph Ortlieb on page 11 of his opposition, their testimony does not discuss, much less provide support for, Plaintiff's assertion of a correlation between the Marmora route and overtime.

[6] Plaintiff gave a consistent answer in his responses to Defendant's First Set of Interrogatories.  In response to Interrogatory No. 2, which asked about Plaintiff's supposed lack of opportunity to drive a more favorable route, Plaintiff stated:

> The [Marmora route] assignment is considered to be more favorable because it does not require additional stops at SDS in Philadelphia and because bottles are loaded in such a way as to avoid their being knocked around during transport requiring no adjustment.  The time to delivery from Moorestown directly to Marmora is 5 hours whereas to deliver from Moorestown to SDS

Accordingly, Plaintiff's belated contention that he suffered a tangible employment action in the form of lost overtime as a result of the route assignments should be rejected because of the complete lack of evidence to the support the claim and because it is contrary to Plaintiff's own testimony.

In addition to failing to demonstrate a tangible adverse employment action with respect to the route assignment claim, Plaintiff has not presented any evidence that would call into question the truthfulness of the legitimate, non-discriminatory reason proffered by Philadelphia Coca-Cola for its route assignments.  See Def. Br. at 22-23 (discussing Plaintiff's obligation to present evidence of pretext or unbelievability to survive summary judgment).  This case is thus indistinguishable from May v. Roadway Express, Inc., 221 F. Supp. 2d 623, 629 (D. Md. 2002) (court grants summary judgment to defendant on plaintiff's claim that he was discriminated against in the distribution of route assignments and overtime because the plaintiff "ha[d] not provided any evidence aside from his own subjective opinion").

> **2.     Plaintiff's Claim About the Assignment of Weekend Hours Fails Because It Was Not Made in the Complaint and Because It Is Not Supported By Evidence.**

Plaintiff seeks to raise another new claim of discrimination in his opposition – that he was denied the opportunity to work weekend overtime.  Specifically, he claims that the Company used United States Department of Transportation ("DOT") regulations concerning

---

(..continued)
    takes 2 hours and must be repeated several times throughout the shift.

See Exhibit 4, Defendant's First Set of Interrogatories at p. 2; Exhibit 5, Plaintiff's Responses to Interrogatories at p. 3.  Further, to this date, has Plaintiff never responded to Defendant's Interrogatory inquiring as to the amount of monetary damages he claims to have suffered.  See Exhibit 6, Letter of November 25, 2002 to Roseann Weisblatt, Esq.

mandatory time off between shifts and maximum number of work hours per week as a basis for avoiding scheduling him for weekend overtime hours.[7]

Plaintiff's allegation concerning the scheduling of weekend overtime also fails. First, Plaintiff did not make such a claim in his EEOC Charge of Discrimination or in his Complaint. Accordingly, the issue is not properly before the Court. King v. M.R. Brown, Inc., 911 F. Supp. 161, 166 (E.D. Pa. 1995) (separate claim not raised in EEOC Charge may not be asserted in court action); Anderson v. Bell Atlantic Telephone Co., Civil Action No. 85-107, 1986 U.S. Dist. LEXIS 30038, *11 (E.D. Pa. 1986) ("it is not defendant's burden to negate matters not alleged in the complaint").

Second, Plaintiff has not produced any evidence to support his claim that the Company manipulated the weekend overtime scheduling so as to cause him to suffer a loss in overtime opportunities. Indeed, his own admissions that he could not start at 7 a.m. on Saturday because of his Friday schedule and that drivers more senior than him picked the earlier weekend start times belie these allegations. Pl. Exh. 1, Cabral Tr. at 122-23. Thus, his claim is based on the same bald, unspecific allegations of discriminatory conduct that courts routinely recognize is insufficient as a matter of law to sustain a claim in the face of a motion for summary judgment. Haydinger v. Freedman, Civil Action No. 98-3045, 2000 U.S. Dist. LEXIS 7924, *12 (E.D. Pa. June 8, 2000) (if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation, the court must grant summary judgment); May, 221 F. Supp. 2d at 627 ("[u]nsupported speculation is insufficient to defeat a motion for summary judgment").

---

[7]    See 49 C.F.R. § 395.3.

Plaintiff does cite to and attach three purported grievances as "evidence" of his claim. See Pl. Br. at 12. However, two of the purported "grievances" are unsigned, conclusory hearsay statements pertaining to another employee (Esteban Roche) and thus do not advance or support Plaintiff's claim that he was treated discriminatorily.[8]

In the third grievance, Plaintiff, without alleging discrimination, claimed that he was denied the opportunity to work on one Saturday even though he was eligible to do so. See Pl. Exh. 13. As to this instance, there is no factual dispute. At his deposition, Joe Ortlieb, Plaintiff's supervisor at the time, provided a legitimate, non-discriminatory reason concerning why Plaintiff was not scheduled to work that Saturday. Ortlieb explained that Plaintiff, as of the time the weekend schedules were made, was scheduled to work 10 hours on the Friday before the weekend in question. As a result, Plaintiff only had 14 hours left until he reached the DOT maximum number of hours in a week – enough for only one weekend day, not two. Pl. Exh. 4, Ortlieb Tr. at 82-83.[9] As it turns out, Plaintiff went home after only working eight hours on Friday, leaving him available to work 16 hours over the weekend. However, by that time (midnight Friday night), it was simply too late to adjust the weekend work schedule. Id. at 84-85. The Company nevertheless paid Plaintiff for the eight hours he would have worked on Saturday at a time and one-half rate because Plaintiff, by virtue of his unanticipated early departure, would, in hindsight, have been eligible to work those hours. See Pl. Exh. 5, Fonseca Tr. at 33-36.

---

[8] Luis Fonseca, the Company's Director of Labor Relations, testified, without contradiction, that Mr. Roche had filed two grievances involving weekend assignments which had been denied as being without merit because the Union contract had been followed. Pl. Exh. 5, Fonseca Tr. at 29-30.

[9] Ortlieb further testified that, in selecting from the two weekend days, he assigned Plaintiff to Sunday because it paid at a higher rate. Id. at 86.

Plaintiff has never challenged Ortlieb's explanation (which was echoed by Luis Fonseca) and, indeed, cannot produce any evidence that would allow a reasonable factfinder to conclude that the proffered justification is pretextual or unbelievable. Nor did Plaintiff suffer any loss as a result of this situation, as the Company paid him for Saturday. Accordingly, Plaintiff's bald allegation that the assignment of overtime on this one weekend was discriminatory does not suffice as a basis for denying Defendant's Motion. See Billet v. CIGNA Corp., 940 F.2d 812, 828 (3d Cir. 1991) ("[w]ithout some evidence to cast … doubt [on the employer's articulated reasons for an employment decision], this court will not interfere in an otherwise valid management decision").[10]

### C. Summary Judgment Should Be Granted As to Plaintiff's Retaliation Claim.

In his opposition as to his retaliation claim, Plaintiff states only (a) that he did not falsify the dentist's note, (b) that three employees received better treatment in response to their request for time off, and (c) that he was terminated "only four months" after he filed his EEOC Charge. None of these arguments create a factual issue or save his retaliation claim.

Regarding the note, Plaintiff's own sworn testimony, cited in Defendant's initial memorandum, makes it clear that he did submit a note from the dentist that he knew was a fabrication, in that it stated he was having oral surgery on dates when he was actually in Florida (having had the surgery three weeks earlier). See Def. Br. at 8-9; Pl. Exh. 1, Cabral Tr. at 87-88,

---

[10] Plaintiff also claims that he was assigned to a mandatory weekend shift for a weekend in which he was known to have been out of town. Pl. Br. at 5. This claim also fails to create a triable issue, for it is undisputed that Cabral was mandated to work in reverse order of seniority, that he received an "occurence," and that he suffered no adverse action as a result of being scheduled to work. Pl. Exh. 1, Cabral Tr. at 171. Moreover, Cabral cannot demonstrate that the Company's legitimate, non-discriminatory reason for scheduling him – that it had to under the collective bargaining agreement before it could move on to the next, more senior employee (Pl. Exh. 4, Ortlieb Tr. at 100) – was pretextual or unbelievable.

92-93, 95, 117-18.  He may not now create a factual issue by trying to contradict his own testimony, apparently by the "slight-of-hand" of claiming he did not "falsify" the note because the pen was in the hand of the dentist's wife.  Regardless, it is well recognized that a plaintiff may not avoid summary judgment by merely stating that his employer reached the wrong conclusion concerning the event(s) that served as the basis for the discharge.  Pamintuan v. Nanticoke Memorial Hospital, 192 F.3d 378, 387 (3d Cir. 1999) (plaintiff's retort that she was, in fact, competent is irrelevant since "[plaintiff] cannot survive summary judgment simply by alleging that [defendant's] decision was 'wrong or mistaken'"); Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (issue is not whether the employer is "wise, shrewd, prudent or competent," but rather whether improper animus motivated the defendant).  Thus, Plaintiff's "I didn't do it"[11] argument is not only contradicted by his sworn testimony to the contrary, but is also irrelevant as a legal matter.

With regard to Plaintiff's allegation of more favorable treatment by Philadelphia Coca-Cola of other employees requesting leave, Plaintiff appears to be taking issue with the Company's policy that two transport drivers cannot take the same day off as a personal day because of business needs.  See Def. Br. at 8.  The argument is a "red herring" because it has nothing to do with the reason for Plaintiff's termination, which, as he admitted, was dishonesty.  Pl. Exh. 1, Cabral Tr. at 95.  Rather, it relates to Plaintiff's claim concerning how his leave was classified – a claim that fails for a number of reasons, including, as Plaintiff admitted, that no tangible employment action occurred as the result of his absence.  See Def. Br. at 24-26; Pl. Exh. 1, Cabral Tr. 94, 99-100.

---

[11]   In his deposition, he also said the Union shop steward told him to bring in the note (Pl. Exh. 1, Cabral Tr. at 91), but admitted he was not told to bring in a false or fabricated note (Id. at 112-13).

Finally, the fact that "only four months" passed between the date Defendant received notice of the EEOC Charge and Plaintiff's termination does not create a triable issue on Plaintiff's retaliation claim.  The "mere fact that adverse employment action occurs after [the employee has engaged in protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d. Cir. 1997).  In fact, timing alone will create an inference of causation only where it is "unusually suggestive" of retaliation.  Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  Here, the timing does not create a triable issue because a four-month period is not usually suggestive.  See Silvestre v. Sera Care, Inc., Civil Action No. 02-446, 2002 U.S. Dist. LEXIS 25267, *24-29 (E.D. Pa. Dec. 30, 2002) (summary judgment granted where there was a two month period between protected activity and termination because evidence as a whole failed to establish causal connection); Williams v. Philadelphia Housing Authority, Civil Action No. 00-1709, 2002 U.S. Dist. LEXIS 21746, *27-28 (E.D. Pa. Oct. 30, 2002) ("no reasonable jury could conclude that the two events shared a causal link" even though they were only two months apart); Hussein v. Genuardi's Family Markets, Civil Action No. 00-4905, 2002 U.S. Dist. LEXIS 430, *27 (E.D. Pa. Jan. 15. 2002) (summary judgment granted because two months temporal proximity "is not particularly suggestive of retaliation").  Indeed, Plaintiff proffers no evidence whatsoever of a causal connection between his December 13, 2000 discrimination charge and his leave in May 2001 to go to Florida or his subsequent termination for dishonesty in late June 2001.  In fact, the latter event occurred only because of the convolutions Plaintiff himself engaged in upon his return from Florida in an effort to avoid an "occurrence" under the attendance policy that he admitted would have had no impact on him in any event.

**III.     CONCLUSION**

        For the foregoing reasons, as well as those set forth in its initial memorandum, Defendant respectfully requests that the Court grant its Motion for Summary Judgment, enter judgment in its favor dismissing with prejudice all counts of the Complaint, and award to it its costs and attorneys' fees in defending this action.

                              Respectfully submitted,

Dated: February 27, 2003

                              Gerald S. Hartman
                              Gregory W. Homer, I.D. No. 58710
                              DRINKER BIDDLE & REATH LLP
                              1500 K Street
                              Suite 1100
                              Washington, DC 20005
                              (202) 842-8800

                              David J. Woolf, I.D. No. 76484
                              DRINKER BIDDLE & REATH LLP
                              One Logan Square
                              18th & Cherry Streets
                              Philadelphia, PA  19103
                              (215) 988-2700

                              Attorneys for The Philadelphia
                              Coca-Cola Bottling Company

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 27th day of February, 2003, I served a copy of Defendant's Motion For Leave to File A Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, with attached Reply Brief in Support of Defendant's Motion for Summary Judgment, upon the following attorneys for the Plaintiff by the following methods:

<u>By Hand Delivery:</u>

> Robert T. Vance, Jr., Esq.
> Law Offices of Robert T. Vance, Jr.
> 1616 Walnut Street, Suite 709
> Philadelphia, PA 19103

<u>By First Class Mail:</u>

> Roseann E. Weisblatt, Esq.
> Feldman & Rifkin LLP
> 101 Greenwood Avenue, Suite 230
> Jenkintown, PA 19046

February 27, 2003                         _____
                                          David J. Woolf